**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No. **CV 26-853-JFW(RAO)** | Date: February 18, 2026 |

Title: Ernest Soloian -v- Kristi Noem, et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [filed 2/3/26; Docket No. 5]

On February 3, 2026, Petitioner Ernest Soloian ("Petitioner") filed an *Ex Parte* Application for Temporary Restraining Order ("Application"). On February 6, 2026, Respondents Kristi Noem ("Noem"), Todd Lyons ("Lyons"), and Ernesto Santacruz ("Santacruz") (collectively, "Respondents") filed their Opposition.[1] On February 7, 2026, Petitioner filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for February 23, 2026, is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

    **A.    Factual Background**

Petitioner is a native and citizen of Georgia. Petitioner was born on August 17, 1983, in Tbilisi, Georgia. When he was approximately fourteen years old, Petitioner emigrated to the United States as refugees due to the persecution against Armenians in Georgia. Petitioner's family

---

[1] In his Application, Petitioner seeks a temporary restraining order ("TRO") and an Order to Show Cause why an order for a preliminary injunction should not be granted. Because Respondents had notice and an opportunity to respond, the parties briefed the issues thoroughly, and the standard for a TRO and a preliminary injunction are the same, the Court will treat Petitioner's Application as a motion for preliminary injunction.

settled in Los Angeles, California, where Petitioner attended school.  After school, Petitioner worked as a roofer, plumber, handyman, diamond polisher, diamond setter, and auto sales.  On December 30, 2005, Petitioner became a lawful permanent resident.

According to Petitioner, he struggled with a drug abuse disorder and incurred convictions that made him removable.  Specifically, on August 24, 2015, Petitioner was convicted in the United States District Court, Southern District Court of California, for conspiracy to commit mail and wire fraud in violation of Title 18 U.S.C. § 371.  Petitioner was sentenced to serve 36 months in prison and ordered to make restitution in the amount of $1,503,417.00.  After Petitioner's release from criminal custody he was referred to immigration court for removal proceedings.  On December 13, 2018, an Immigration Judge ordered Petitioner removed from the United States to Georgia.  On July 19, 2019, the Board of Immigration Appeals dismissed Petitioner's appeal and affirmed the removal order.  On approximately September 11, 2019, Petitioner was released on an Order of Supervision ("OSUP") because United States Immigrations and Customs Enforcement's ("ICE") Enforcement and Removal Operations ("ERO") were unable to obtain travel documents for Petitioner from Georgia.

From September 2019 through January 27, 2026, Petitioner remained in the Los Angeles area on OSUP and complied with all conditions imposed by ICE, including appearing at required check-ins as directed.  Petitioner had no arrests or contact with law enforcement during this period.  While on supervision, Petitioner rebuilt his life, including maintaining steady employment.  Petitioner married a United States citizen, and the couple are raising their United States citizen daughters, who are one and three years old.  Petitioner is the primary provider of financial support for his wife and daughters.

On January 27, 2026, Petitioner appeared for a routine supervision appointment in Los Angeles.  During that appointment, ICE officers informed Petitioner that although travel documents had been requested from Georgia, Georgia had refused to issue travel documents.  According to Petitioner, the ICE officers did not advise him when those communications with the Georgian Consulate occurred and Petitioner was not provided with any written documentation regarding Georgia's denial or explaining the reasons for it.  During that same appointment, ICE revoked Petitioner's OSUP and detained him.  Petitioner was served with a Notice of Revocation of Release stating that ICE was seeking a travel document to effect his removal to Georgia or a third country.  Petitioner alleges that he was not provided with any information regarding whether any travel documents had been issued by Georgia or a third country, whether a third country had agreed to issue travel documents to him, or whether a removal date had been scheduled.  Although the Notice of Revocation states that Petitioner "will be afforded an informal interview," the space for the interview date was left blank.  According to Petitioner, he was not interviewed during the supervision appointment.  Specifically, Petitioner was not asked questions, given an opportunity to explain his circumstances, or permitted to present information in support of a continuation of his supervision.  According to Respondents, Petitioner was provided an informal interview, and Respondents include an "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(I); 8 C.F.R. § 241.13(I)" form with their Opposition, although Respondents failed to discuss what Petitioner was told or what was discussed during the interview.  The Notice of Revocation of Release was signed by "Nelly Mckenna, Supervisory Detention and Deportation Officer."  That evening, Petitioner was transferred to the Adelanto ICE Processing Center ("Adelanto"), where he remains detained.

During his detention at Adelanto, Petitioner has not been contacted by any ICE officer for an informal interview regarding the revocation of his OSUP.  As of February 3, 2026, the date of his declaration, Petitioner states that no ICE officer has asked him any questions, sought his input, or provided him with an opportunity to present information in support of his release.  Petitioner's immigration attorney, Douglas Jalaie ("Jalaie"), has also not received any explanation for Petitioner's detention.  On January 30, 2026, Jalaie sent an email to Adelanto, indicating that he had electronically submitted his Notice of Entry of Appearance as Attorney form (Form G-28) and asking to receive more details about Petitioner's case.  Specifically, Jalaie asked: (1) where Petitioner was currently housed/located; (2) if ICE had travel documents for Petitioner's removal; (3) if ICE had diplomatic assurances that Petitioner would not be persecuted in the country of removal; (4) to be provided with a copy of any documents served on Petitioner; (5) if ICE was attempting removal to a third country outside of the order of removal; (6) what documents had been served on Petitioner since his most recent arrest by ICE; and (7) to be provided a copy of the document the non-ICE officers at Adelanto had requested Petitioner to sign but refused to give him a copy.  On February 2, 2026, Jalaie received an email from L. Palacios ("Palacios") acknowledging that Jalaie's "G-28 ha[d] been received" and that Petitioner was being housed at Adelanto.  The only other information provided in the email was that:

> We are in the process of requesting travel documents from his place of birth in Georgia.  Any documents will be forwarded to your office.

### B.     Procedural History

On January 27, 2026, Petitioner filed a Petition for Writ of Habeas Corpus Under to 28 U.S.C. § 2241 ("Petition"), alleging claims for: (1) violation of the Fifth Amendment's Due Process Clause; (2) violation of the Administrative Procedures Act, 5 U.S.C. § 702, for failing to comply with 8 C.F.R. §§ 241.4(l) and 241.13(i) when revoking Petitioner's OSUP; and (3) violation of due process under the Fifth Amendment and violation of the Immigration and Nationality Act, 8 U.S.C. § 1231 and 8 C.F.R. § 12.

On January 29, 2026, Magistrate Judge Rozella A. Oliver issued an Order requiring Respondents to file a response to the Petition no later than February 19, 2026.  Docket No. 4.  To preserve the Court's jurisdiction, Magistrate Judge Oliver enjoined Respondents "from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court."

## II.    Legal Standard

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### III.   Discussion

In his Application, Petitioner seeks an Order from this Court: (1) immediately releasing Petitioner from custody unless and until he receives adequate notice an a hearing to determine the legality of his re-detention; and (2) if Petitioner is to be removed to a third country, that Petitioner be informed of ICE's intention to do so and that he receive an individualized opportunity to challenge removal through a reasonable fear interview.

#### A.   Jurisdiction

As an initial matter, Respondents argue that, under 8 U.S.C. § 1252(g), this Court does not have jurisdiction "to contest [Respondents'] decision to detain Petitioner pending his removal pursuant to a final removal order." However, Section 1252(g) does not prohibit the Court from hearing Petitioner's claims. Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate

cases, or execute removal orders against any alien under this chapter.

Although it is true that the Court cannot review the substance of Petitioner's final order of removal, Petitioner is not challenging the order of removal itself. Instead, Petitioner is challenging his detention on statutory and constitutional process grounds. The Supreme Court has held that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Marquez v. I.N.S.*, 346 F.3d 892, 896 (9th Cir. 2003) (holding that the district court has jurisdiction over a habeas claim where the petitioner claims detention violates substantive and procedural due process rights).

Accordingly, the Court concludes that Section 1252(g) does not preclude it from exercising jurisdiction over Petitioner's Petition.

### B. Petitioner Has Demonstrated A Likelihood of Success on the Merits

#### 1. Legal Standard

Under the Immigration and Nationality Act ("INA"), when an alien is ordered removed, the government ordinarily must secure the alien's removal from the United States within a period of ninety days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Certain aliens ordered removed may be detained beyond the ninety-day removal period, including those who are removable for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). However, in *Zadvydas*, 533 U.S. at 682, the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." In other words, "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Supreme Court reasoned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law'" and the Supreme Court made clear that aliens, whether their presence is lawful, unlawful, temporary, or permanent, enjoy due process constitutional protections. *Id.* at 690. Indeed, "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id.*

If an alien cannot be removed to their country of origin, federal regulations require ICE to release them from detention on an OSUP if there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute"). In this case, although Petitioner was ordered removed to Georgia, ICE ERO were unable to obtain travel documents for Petitioner from Georgia, and Petitioner was released on an OSUP on approximately September 11, 2019.

Once ICE releases an alien on an OSUP, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *See Roble v. Bondi*, 2025 WL 2443453 (D. Minn. Aug. 25, 2025) (finding that ICE had illegally re-detained the petitioner and ordering his immediate release

where the petitioner had been ordered removed to Somalia but his deferral of removal under CAT precluded the government from removing him to Somalia and the government failed to demonstrate that there was a significant likelihood that he may be removed in the reasonably foreseeable future). Indeed, both 8 C.F.R. § 241.4 and § 241.13 require that the alien be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after hisor her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).

An alien released from custody on an OSUP also has a liberty interest in remaining out of custody that is protected under the Fifth Amendment's Due Process Clause. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025); *Hoang v. Santa Cruz*, 2025 WL 3141857, at *4 (C.D. Cal. Oct. 28, 2025); *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). As a result, ICE's failure to follow its own regulations, which are designed to provide an alien with notice and an opportunity to be heard, violates due process. *See McSweeney v. Warden of Otay Mesa Det. Facility*, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) ("Both § 241.4 and § 241.13 were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.' … ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release"); *Diaz v. Wofford*, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation.").

### 2. Petitioner is Likely to Succeed on the Claims Alleged in His Petition

The Court concludes that Petitioner has demonstrated a likelihood of success on the merits. It is unlikely that Supervisory Detention and Deportation Officer Nelly Mckenna ("Mckenna"), the ICE official who signed Petitioner's Notice of Revocation and Release, has the authority to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(l)(2). Pursuant to Section 241.4(l)(2), the "Executive Associate Commissioner" or "district director" may exercise her discretion and revoke the release if any of the following occur: (a) the purpose of release has been served; (b) the alien violates any condition of release; (c) it is appropriate to enforce a removal order or to commence removal proceedings against the alien; or (d) the conduct of the alien, or any other circumstances, indicates that release would no longer be appropriate. *See* 8 C.F.R. § 241.4(l)(2); *see also* 8 C.F.R. § 1.2 ("Commissioner means . . . the Director of U.S. Immigration and Customs Enforcement"); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (holding that the "Executive Associate Commissioner" referenced in 8 C.F.R. § 241.4(l) now refers to the "Executive Associate Director of ICE"); *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *4 (D. Md. Aug. 25, 2025). However, Mckenna's title of Supervisory Detention and Deportation Officer indicates that she is neither the Executive Associate Director of ICE nor a district director, and Respondents have not submitted any evidence to the contrary. *See Gazazyan v. Bondi,* 2025 WL 3898484 (C.D. Cal. Nov. 7, 2025) (concluding, after an exhaustive analysis, that Mckenna did not have the authority to give valid notice of the reason for the revocation of release under Section 241.4(l)(2)).

In addition, ICE must notify the alien of "the reasons for revocation" of release "upon revocation." *See* 8 C.F.R. § 241.4(l)(1). After the alien is returned to custody, ICE must afford the

noncitizen an "initial informal interview promptly" to afford him "an opportunity to respond to the reasons for revocation stated in the notification." Id. ICE must comply with these revocation procedures regardless of whether release was revoked under Section 241.4(l)(1) or (l)(2). *See Gazazyan*, 2025 WL 3898484, at *5 (concluding that "Section 241.4(l)(2) requires the government to provide the same notice and informal interview required by Section 241.4(l)(1)").

In this case, the evidence demonstrates that Respondents did not properly revoke Petitioner's release under Section 241.4(l). According to the Notice of Revocation of Release, Petitioner's release was revoked because "ICE is seeking a travel document to effect your expeditious removal to Georgia or Third Country." Subsequently, Palacios, a Detention Officer at Adelanto, told Petitioner's immigration attorney Jalaie in an email that ICE is "in the process of requesting travel documents from his place of birth Georgia." However, Respondents' previous request for travel documents from Georgia for Petitioner was denied. Indeed, Petitioner was released on an OSUP after Respondents' attempts to secure travel documents from Georgia failed. In addition, Respondents failed to provide any evidence in their Opposition that travel documents have, in fact, been requested from Georgia (or a third country), or why they believe they will be able to obtain travel documents for Petitioner now when they have been unable to do so for over six years. *See, e.g.,* Nguyen, 788 F.Supp. 3d 144 (rejecting the government's argument that changed circumstances made the petitioner's removal significantly likely in the foreseeable future because ICE was processing a travel document request for the petitioner because the government "provided scant information" about "what concrete steps ICE has taken to process [the petitioner's] particular travel document" and the anticipated outcome of that request); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (rejecting the government's argument that ICE's intent to apply for a travel document for the petitioner constituted changed circumstances because the government failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around"). As a result, the Court concludes that Respondents failed to properly inform Petitioner "what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Khachikian v. Casey*, 2026 WL 63633, at *7 (S.D. Cal. Jan. 8, 2026) (*quoting Phakeokoth v. Noem*, 2025 WL 3124341, at *4 (S.D. Cal. Nov. 7, 2025)). Moreover, without a more specific statement, Petitioner could not have meaningfully responded during the requisite informal interview.[2] *See, e.g., Hashemi v. Noem*, 2025 WL 3468694, at *5 (concluding that because petitioner was given vague, generic statements in the notice of revocation of release, "he could not have meaningfully responded to them at th[e] alleged informal interview").

Accordingly, the Court concludes that Petitioner has demonstrated that the likelihood of

---

[2] The parties disagree whether Petitioner was actually provided the requisite informal interview. In his declaration, Petitioner states that he was not given an informal interview before he was re-detained or at any time since his detention at Adelanto. Although Respondents attached an form entitled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)," there is no declaration from the person who signed the form, Detention Officer Karlo De Leon, to either authenticate the form or advise what happened during the interview. Palacios, the only person to submit a declaration with Respondent's Opposition, does not address whether or not Petitioner was provided with an informal interview or discuss the form at all.

success on the merits factor weighs in his favor.

### C. Petitioner Has Demonstrated the Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation omitted). In addition, the "Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (*quoting Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)).

Accordingly, the Court concludes that Petitioner has demonstrated that the likelihood of irreparable harm factor weighs in his favor.

### D. The Balance of Equities and the Public Interest Factors Weigh in Favor of Petitioner

The last two *Winter* factors – the balance of the equities and public interest analyses – merge when the government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (*citing Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, . . . the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted).

In this case, Petitioner has demonstrated that his current detention is unlawful and the burden on Respondents in releasing Petitioner is minimal, especially considering Petitioner's compliance with all of the requirements of the OSUP, his regular check-ins with ICE since his release on September 11, 2019, his familial ties to the Los Angeles area, and his role as primary financial support for his wife and children.

In addition, the Court concludes that there is nothing in the record to demonstrate that releasing Petitioner would impede Respondents' ability to remove him if the necessary travel documents are obtained. Moreover, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering,'" and that "[s]upervised release programs cost much less by comparison." *Hernandez v. Sessions*, 872 F.3d 976, 996 (ith Cir. 2017). As a result, the Court concludes that Respondents' cost of Petitioner's continued detention is not in the public interest in light of Petitioner's compliance with his OSUP, consistent attendance at scheduled ICE check-ins, and his responsibilities to his wife and children. *See Vargas v. Jennings*, 2020 WL 5074312, at *4.

Accordingly, the Court concludes that Petitioner has demonstrated that balance of equities and the public interest factors weigh in his favor.

### E. Releasing Petitioner From Custody Preserves the Status Quo

In his Application, Petitioner asks the court to release him from detention. The status quo

*ante litem* is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir, 2000) (*quoting Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (holding that "the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (*citing McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012)). In this case, Petitioner was released on an OSUP on approximately September 11, 2019, and continued on an OSUP until he was re-detained by Respondents on January 27, 2026. Because Petitioner is challenging his re-detainment, the last uncontested status of Petitioner was before he was re-detained on January 27, 2026. *See Doe v. Becerra*, 2025 WL 691664, *2 (E.D. Cal. Mar. 3, 2025) ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing"); *Domingo-Ros v. Archambeault*, 2025 WL 1425558, at * (S.D. Cal. May 18, 2025) (granting an injunction for the petitioners who sought a "probationary injunction" to "preserve the status quo preceding this litigation – their physical presence in the United States free from detention"); *Abrego Garcia v. Noem*, 777 F.Supp. 3d 501, 516 (D. Md. Apr. 6, 2025) (finding that the petitioner "request[ed] relief designed to re[s]tore the status quo ante . . . to return him to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to [the Terrorism Confinement Center in El Salvador]"); *Pinchi v. Noem*, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo).

Accordingly, the Court finds Petitioner's immediate release is appropriate in order to return him to the status quo.

### F.    Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65( c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (*quoting Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. (citation omitted). As a result, the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). In this case, Respondents have not demonstrated any likelihood of harm if the Court grants the requested relief, and has not requested a bond if that relief is granted. In addition, a bond would pose a hardship on Petitioner.

Accordingly, the Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

### IV.    Conclusion

For all of the foregoing reasons, Petitioner's Application for a temporary restraining order

and a preliminary injunction are **GRANTED**.  Respondents are **ORDERED** to immediately release Petitioner from custody subject to and in accordance with the conditions of his pre-existing OSUP.  Respondent is **ENJOINED** and **RESTRAINED** from re-detaining or removing Petitioner to Georgia or any third country without adequate notice and an opportunity to be heard.

    IT IS SO ORDERED.